Steven M. Chabre, SBN 173271
The Law Office of Steven M. Chabre
1335 Park Avenue
Alameda, CA 94501
(510) 749-1440
(510) 749-0466 (fax)

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| ELISABETH JENSSEN, | Case No.: C 07-05449 JSW |
| Plaintiff, | **COMPLAINT FOR DISABILITY BENEFITS UNDER ERISA** |
| vs. | |
| NORDSTROM, INC. WELFARE BENEFIT PLAN AND TRUST and METROPOLITAN LIFE INSURANCE COMPANY, | |
| Defendants. | |

Plaintiff, Elisabeth Jenssen, alleges:

1. JURISDICTION: Plaintiff's claims are filed pursuant to 29 U.S.C. § 1001, et seq. ("ERISA"). Jurisdiction and venue are therefore proper pursuant to 29 U.S.C. § 1132.

2. INTRADISTRICT ASSIGNMENT: A substantial part of the events which give rise to this claim occurred in Contra Costa County. Therefore assignment to the San Francisco/Oakland Division is appropriate under Civil L.R. 3-2(c)-(d).

COMPLAINT (C 07-05449 JSW)                                                                                           1

3. Plaintiff brings this action pursuant to 29 U.S.C. § 1132(a)(1)(B) to clarify her rights to past and future benefits under the terms of an ERISA welfare benefit plan. Plaintiff seeks payment of ongoing disability benefits and all back benefits that are due to her, with interest.

4. Plaintiff seeks an injunction under 29 U.S.C. § 1132(a)(3) of Metropolitan Life Insurance Company's ("MetLife's") ongoing violations of the terms of the Nordstrom, Inc. Welfare Benefit Plan and Trust ("the Plan").

5. This action seeks attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

**THE PARTIES**

6. Plaintiff is an adult resident of Contra Costa County.

7. Defendant, the Plan, is an employee welfare benefit plan that was established by Nordstrom, Inc. ("Nordstrom") under ERISA.

8. Plaintiff is and was at all times relevant a participant and beneficiary of the Plan.

9. MetLife is a foreign corporation, incorporated in the state of New York, and it is authorized to conduct business in the state of California.

**THE DISABILITY PLAN**

10. The Plan is called the Nordstrom, Inc. Welfare Benefit Plan and Trust.

11. The Plan administrator is Nordstrom.

12. The Plan promises to pay monthly benefits to participants who are disabled as defined by the Plan.

13. The Plan has a basic and an optional buy-up benefit program, and plaintiff enrolled in both the basic and optional buy-up benefit programs.

14. The Plan is insured by MetLife by means of a group insurance policy issued to Nordstrom.

15. After the first 30 months of benefit payments, claims are paid out of the assets of MetLife.

16. MetLife decides whether or not a claim made under the Plan will be paid and is a fiduciary of the Plan.

### PLAINTIFF'S DISABILITY

17. Plaintiff is a 55 year-old woman.

18. Nordstrom employed plaintiff as a salesperson from 1995 until June 5, 1997.

19. Plaintiff stopped working June 5, 1997 after she fell down at work and injured her neck and low back. The 1997 injury aggravated a pre-existing low back condition for which she had had surgery in 1991. Plaintiff's physicians diagnose her as suffering from both cervical and lumbosacral radiculopathy.

20. At all times since June 5, 1997 plaintiff's treating physicians have opined that plaintiff cannot return to her own occupation as a salesperson or to any other occupation because of her medical conditions.

### DISABILITY BENEFIT CLAIM HISTORY

21. Plaintiff applied for long-term disability benefits under the Plan by filing a claim with MetLife, and MetLife approved the claim by letter dated February 18, 1999.

22. Before it even approved the claim, MetLife wrote plaintiff on January 14, 1999 and urged her to file a claim for Social Security disability benefits.

23. Plaintiff filed a claim for Social Security disability benefits, which was granted.

24. Due to plaintiff's receipt of Social Security disability benefits, MetLife demanded repayment of $16,313.98 from plaintiff on June 4, 2002. Plaintiff reimbursed MetLife the debt she owed it.

25. Plaintiff continues to receive Social Security disability benefits.

26. On October 14, 1999, September 11, 2000, and March 25, 2003 plaintiff made written requests to MetLife for a copy of the insurance policy governing her claim. MetLife never sent her the insurance policy.

27. MetLife denied payment of further benefits to plaintiff beyond June 20, 2005, by letter dated June 23, 2005.

28. Plaintiff timely appealed the decision on June 25, 2005, and on August 10, 2005 she wrote MetLife and requested that it send her a copy of MetLife's reviewing physician's report and professional qualifications.

29. MetLife never sent plaintiff the reviewing physician's report or professional qualifications.

30. MetLife denied the appeal by letter dated September 21, 2005.

31. Plaintiff exhausted her administrative remedies under the Plan.

32. MetLife breached its fiduciary duty to plaintiff by arbitrarily denying her claim for the purpose of furthering its own financial interests. Evidence of MetLife's self-dealing includes:

    a. MetLife's unsubstantiated rejection of plaintiff's treating physicians' opinions that plaintiff is disabled;

    b. MetLife's termination of plaintiff's claim in spite of a complete lack of evidence showing any improvement in plaintiff's medical conditions;

    c. MetLife's use of biased physicians to review plaintiff's medical evidence and its reliance on the unreasonable opinions generated by those physicians;

    d. MetLife's disregard of Social Security's ongoing award of disability benefits to plaintiff, in spite of MetLife's previous insistence that plaintiff apply for Social Security disability benefits so that it could recoup a large portion of the benefits it had paid to plaintiff.

e. MetLife's failure to disclose the relevant insurance policy to plaintiff, in spite of plaintiff's repeated requests for the policy and MetLife's statutory and regulatory obligations to disclose it to plaintiff; and

f. MetLife's failure to disclose the report and credentials of one of the reviewing physicians MetLife used to evaluate plaintiff's claim, in spite of plaintiff's request for the information and MetLife's regulatory obligation to disclose the information requested.

### FIRST CAUSE OF ACTION
### (Claim for Benefits – All Defendants)

33. Plaintiff realleges each of the paragraphs above as if fully set forth herein.

34. Plaintiff has performed all of her obligations under the Plan.

35. All conditions precedent to plaintiff's bringing this ERISA claim and to her collecting benefits under this ERISA plan have been performed by plaintiff or have occurred.

36. Plaintiff has been disabled under the terms of the Plan since June 5, 1997, and following a 150 day waiting period, she has been eligible to receive benefits under the Plan at all times since November 2, 1997.

37. 29 U.S.C. § 1132 (a)(1)(B) states:

A civil action may be brought --

    (1) by a participant or beneficiary --

        (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

38. The defendants' actions constitute an unlawful denial of benefits under the Plan and under ERISA, as provided in 29 U.S.C. § 1132 (a)(1)(B).

**SECOND CAUSE OF ACTION**
**(Injunction – MetLife)**

39. Plaintiff realleges each of the paragraphs above as if fully set forth herein.

40. Defendant MetLife, through its self dealing as described in paragraph 32, has demonstrated a pattern and practice of violating the terms of the Plan at plaintiff's expense.

41. 29 U.S.C. § 1132 (a)(3) states:

A civil action may be brought --

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

42. Plaintiff seeks an injunction and other equitable relief to stop MetLife from its ongoing violations of the terms of the Plan.

**THIRD CAUSE OF ACTION**
**(Attorneys Fees and Costs -- All Defendants)**

43. Plaintiff realleges each of the paragraphs above as if fully set forth herein.

44. Under the standards applicable to ERISA, plaintiff seeks to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to 29 U.S.C. § 1132(g).

**PRAYER FOR RELIEF**

45. Plaintiff respectfully requests that this Court review the denial of benefits in this case and declare that she is entitled to ongoing disability benefits under the Plan; entitled to payment of back benefits; and to interest on all back benefits.

46. Plaintiff asks the Court to enjoin MetLife from continuing to violate the terms of the Plan.

47. Plaintiff seeks payment of all attorney's fees and costs associated with attempting to secure the benefits owed to her pursuant to 29 U.S.C. § 1132(g).

48. Finally, plaintiff seeks such other relief as this Court finds appropriate.

BY: ____/s/ *Steven M. Chabre, Esq.*_____     DATED: <u>October 25, 2007</u>
       STEVEN M. CHABRE
       Attorney for Plaintiff